IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

$15,400.00 IN UNITED STATES CURRENCY,

    *Defendant.*

Case No. 14-1139-EFM

**MEMORANDUM AND ORDER**

This is a civil forfeiture action arising out of the seizure of $15,400.00 in United States currency on December 17, 2013, at mile marker 70 on I-70 in Thomas County, Kansas. On May 9, 2014, the government filed a civil complaint against the defendant property, alleging that it is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). In response to the government's complaint, Matthew J. Moro ("Claimant") filed a claim and answer. Claimant asserted that the money was lawfully his and not subject to forfeiture. The government has now filed a Motion for Summary Judgment (Doc. 21) in which it asserts that there is no genuine issue of material fact regarding the $15,400.00, and the Court should grant its motion and order the forfeiture of the defendant property to the United States. Claimant failed to provide a response. For the reasons set forth below, the Court grants the government's motion.

## I. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[1] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[2] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[3] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[4] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[5] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[6]

Here, Claimant failed to file a timely response, and Plaintiff's motion is accordingly unopposed. Under D. Kan. Rule 7.4(b), a party who fails to file a responsive brief within the appropriate time waives the right to later do so, and the Court will consider and decide the motion as an uncontested motion. Although the Court may move forward without waiting for

---

[1] Fed. R. Civ. P. 56(a).

[2] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[3] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[4] *Id.* (citing Fed. R. Civ. P. 56(e)).

[5] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998)).

[6] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Claimant's response, Claimant's failure to respond is an insufficient basis for which to enter summary judgment.[7]  Instead, the Court must still examine the pleadings to determine if summary judgment is appropriate.[8]  By failing to file a response within the time specified, Claimant waives the right to controvert the facts asserted in the summary judgment motion.[9]  Thus, the Court accepts as true all material facts asserted and properly supported in the summary judgment motion.[10]

## II. Facts

On December 17, 2013, Kansas Highway Patrol Trooper Douglas Reed stopped a 2013 Ford Fusion passenger car driving westbound for a traffic violation on I-70 near mile marker 70 in Thomas County, Kansas.  Trooper Reed made contact with Claimant, the driver and sole occupant of the vehicle.  Claimant provided Trooper Reed with an Arizona driver's license that identified his address as Phoenix, Arizona and rental paperwork for the car.  The rental paperwork showed that the car was rented in Cocoa, Florida by the claimant on December 10, 2013, and it was supposed to be returned to that location on December 16, 2013.  Claimant told Trooper Reed that he worked for a gym and traveled around the country helping new gyms start up.

Claimant's Arizona driver's license was suspended on June 5, 2009, and Claimant did not have a valid driver's license from any other state.  Claimant was arrested for not having a driver's license.

---

[7] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

[8] *Id.*

[9] *Id.*

[10] *Id.*

After Claimant's arrest, the contents of his car were inventoried. Two suitcases were found in the trunk of the car. One of the suitcases had a flower pattern, and the other suitcase was black. The flower patterned suitcase contained a Food Saver sealer machine and numerous unused vacuum seal plastic bags. Inside the black suitcase was a smaller flower patterned suitcase. Inside this smaller suitcase, there were more unused vacuum seal bags. Trooper Reed avers that Food Saver sealer machines and vacuum seal bags are commonly used by drug traffickers to package and transport marijuana. In addition, drug traffickers commonly use empty suitcases or other luggage to transport large quantities of drugs.

A backpack in the passenger seat of the car contained a white envelope with $15,400.00 in U.S. Currency. Written on the outside of the envelope was "8000 12/4." The denomination of the defendant currency was 142 hundred dollar bills, 6 fifty dollar bills, and 45 twenty dollar bills. Drug money couriers and drug traffickers often pay for drugs in twenty dollar bill and larger denominations.

Thomas County Undersheriff, Marc Finley, and his certified drug detection dog, Honcho, were brought in to assist with the investigation. Honcho sniffed around six cars in the Thomas County Impound Lot without showing any indication of narcotic odor. Honcho was removed from the area and the defendant currency was placed in one of the six cars. Thirty minutes later, Honcho was taken back to the area to sniff the six cars. Honcho sniffed intensely at the right front corner of the car which is Honcho's prescribed manner of indication that he has detected the odor of a controlled substance. The trooper who hid the defendant currency confirmed that it was hidden in the right front corner of the car to which Honcho alerted.

On December 18, 2013, Claimant was the passenger in a car driven by Alexander Kozlowski. They were stopped on I-40 in Sequoyah County, Oklahoma by Trooper Daran Koch. Kozlowski provided a Florida driver's license.

Kozlowski told Trooper Koch that he had flown from Florida to Denver after receiving a call from Claimant, rented a car, and drove to Kansas to pick up the claimant from jail. Claimant's December 17, 2013, citation shows that the citation was issued at 1021 hours in Colby, Kansas. Kozlowski's rental car agreement shows that the car was rented in Denver on December 17, 2013, at 1416 hours and was due back in Denver on December 18, 2013 at 2200 hours.

Kozlowski told Trooper Koch that Claimant was driving from Little Rock to Denver to see friends about a gym when the claimant was stopped in Kansas. Claimant told Trooper Koch that he and Kozlowski were headed to Little Rock where he worked as a personal trainer at a gym. In his Claim in this case, Claimant stated that he was traveling to Denver to purchase gym or exercise equipment for a business venture in Florida.

A certified drug detection dog alerted to the odor of controlled substances emanating from the rental car occupied by Kozlowski and the claimant. A search of the car revealed twenty-one vacuum sealed bundles of high grade marijuana in excess of ten pounds in a suitcase and two gym bags. Claimant and Kozlowski were arrested. Both made statements indicating that both of them had knowledge of the marijuana.

Claimant is disabled, and his sole source of income from 2013 to the present is Social Security Disability of $1025.00 per month. From 2012 through 2013, Claimant states that he made approximately $3,000.00 per month, plus commission, working at a fitness center. From 2007 through 2013, Claimant states that he made approximately $4,000.00 per month, plus

commission, working as a district manager of a personal training company. Claimant did not file federal income tax returns for the years 2009, 2010, 2011, 2012, or 2013.

### III. Analysis

In a civil forfeiture action, the government bears the burden of proof to establish by a preponderance of the evidence that the currency is subject to forfeiture.[11] To meet its burden, the government may rely on evidence gathered after the filing of the forfeiture complaint.[12] The Court must "consider the totality of the evidence as a whole and in the appropriate context."[13]

21 U.S.C. § 881(a)(6) provides for forfeiture of:

> All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter.

In this case, the government asserts that the defendant currency is the proceeds of drug trafficking and/or was intended to be used to purchase drugs. Thus, the government need not demonstrate that the currency is related to a specific drug transaction but instead must trace the currency to drug trafficking in general.[14] "The usual evidence in a currency seizure case is a dog sniff, a quantity of currency, an unusual manner of packaging and the claimant's implausible story, which is together sufficient to meet the government's preponderance standard."[15] In

---

[11] 18 U.S.C. § 983(c)(1).

[12] 18 U.S.C. § 983(c)(2).

[13] *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274 (10th Cir. 2007) (quotation marks and citation omitted).

[14] *See United States v. $21,055.00 in U.S. Currency*, 778 F. Supp. 2d 1099, 1103-04 (D. Kan. 2011); *see also United States v. $118,170.00 in U.S. Currency*, 69 F. App'x 714, 717 n.1 (6th Cir. 2003).

[15] *$21,055.00*, 778 F. Supp. 2d at 1104 (quoting *United States v. $42,500.00 in U.S. Currency*, 283 F.3d 977, 984 n.1 (9th Cir. 2002) (dictum)); *see also United States v. $117,920.00 in U.S. Currency*, 413 F.3d 826, 829

addition, a court may consider a claimant's tax returns when determining whether the claimant had sufficient legitimate income to account for the possession of a large amount of currency.[16]

In this case, the facts demonstrate by a preponderance of the evidence that the currency is traceable to drug trafficking. First, the Court considers the quantity and manner of packaging. Currency in the amount of $15,400.00 was found in an envelope that stated "8000 12/4" on the outside. Courts have found possession of currency in lesser amounts to be sufficiently strong evidence of relation to a drug transaction.[17] The currency was also in denominations of 142 hundred dollar bills, 6 fifty dollar bills, and 45 twenty dollar bills. As Trooper Reed averred, large bill denominations are commonly used by drug traffickers to purchase illegal drugs. Furthermore, the currency was found along with multiple empty suitcases, a Food Saver machine, and multiple vacuum seal bags which are commonly used to package marijuana. Finally, the day after Claimant was found to be in possession of a Food Saver machine and the currency, he was the passenger in a car that contained ten pounds of marijuana sealed in twenty-one vacuum sealed bags. Thus, this evidence is indicative that the currency is subject to forfeiture.

In addition, a drug dog gave a positive alert to the currency indicating that the currency had been in the proximity of illegal drugs. "A properly trained drug dog's alert to currency is entitled to probative weight."[18] Accordingly, the drug dog's sniff alert is relevant when

---

(8th Cir. 2005) (finding that a large amount of cash, manner of packaging, false statements, and drug sniff sufficient evidence to support a connection between the currency and drug trafficking).

[16] *United States v. $30,670.00*, 403 F.3d 448, 465-66 (7th Cir. 2005).

[17] *See United States v. $13,000.00 in U.S. Currency*, 858 F. Supp. 2d 1194, 1199 (D. Colo. 2012) (rejecting the defendant's argument that $13,000 was not a sufficiently large sum of currency to indicate a connection to drug transactions).

[18] *$21,055.00*, 778 F. Supp. 2d at 1105.

determining whether the government presents sufficient probative evidence that the currency subject to forfeiture.

Third, Claimant provided inconsistent stories regarding his travel plans and the currency. Claimant told several different versions regarding the origin and destination of his trip. With regard to the currency, Claimant asserted that a portion of the currency, $9,400.00, came from his bank account. However, the records that Claimant provided regarding the amount of withdrawn money did not match the currency amount. Furthermore, although Claimant asserted that he earned a certain amount of money from 2007 through 2012, Claimant had no legitimate income because he did not file tax returns for the years 2009 through 2013.[19] "A court may rely on a claimant's tax returns in determining whether claimant had sufficient legitimate income to account for possession of a large quantity of currency."[20] Here, the evidence demonstrates that Claimant did not have adequate income to account for the large amount of currency. Thus, Claimant's inconsistent stories regarding travel plans and the currency, as well as the lack of tax returns indicating any income, are probative evidence that the currency is related to drug trafficking.

Finally, Claimant was stopped in Oklahoma just one day after his traffic stop in Kansas. During this stop, law enforcement seized ten pounds of marijuana from the car in which claimant was a passenger. This fact, coupled with all of the other evidence, indicates that the large amount of currency found in Claimant's possession the previous day was related to drug trafficking.

---

[19] Claimant is currently disabled and has received Social Security Disability in the amount of $1,025.00 a month from 2013 through the present.

[20] *Id.*

As a whole, the facts establish by a preponderance of the evidence that the currency is traceable to drug trafficking and thus is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 7th day of January, 2016.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE